# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CHAVIES HOSKIN,

                Plaintiff,

v.

CITY OF MILWAUKEE,
CHIEF EDWARD FLYNN,
CAPTAIN EDITH HUDSON,
SERGEANT JASON MUCHA,
MICHAEL VAGNINI, and
THOMAS MAGLIO,

                Defendants.

Case No. 13-CV-920-JPS

ORDER

       The plaintiff, Chavies Hoskin, filed his complaint in this matter on August 13, 2013. (Docket #1). In it, he alleges that Michael Vagnini ("Vagnini"), a former police officer with the Milwaukee Police Department ("MPD") and one of the defendants, unlawfully strip-searched him near a public street, while Sergeant Jason Mucha ("Mucha") and Officer Thomas Maglio ("Maglio") stood by and did nothing. (Compl. ¶¶ 14–15). He sues: Vagnini; Mucha; Maglio; the City of Milwaukee ("the City"); and Vagnini and Maglio's supervisors, Chief Edward Flynn ("Flynn"), Captain Edith Hudson ("Hudson"), and Mucha for violations of 42 U.S.C. § 1983, under various theories of liability. (Compl. ¶¶ 41–68). The defendants answered the plaintiff's complaint, (Docket #19), and thereafter moved for partial judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket #24). That motion is fully briefed (Docket #25, #26, #28), and the Court now addresses it.

# 1. BACKGROUND

Before turning to the substance of the defendants' motion for partial judgment on the pleadings, the Court will first discuss the plaintiff's allegations and claims in further detail.

## 1.1 Alleged Facts

The plaintiff was driving his car on 13th Street, in Milwaukee, Wisconsin, on July 31, 2009, when Vagnini, Mucha, and Maglio stopped him. (Compl. ¶¶ 11–12).[1]

Then, despite an alleged lack of probable cause, Vagnini handcuffed and strip-searched the plaintiff. (Compl. ¶¶ 13–14). Apparently unconcerned with affording the plaintiff some modicum of privacy, Vagnini reached into the plaintiff's underwear, grabbed the plaintiff's genitals, and touched the plaintiff's buttocks and anus, all within public view of the street. (Compl. ¶ 14). Maglio and Mucha, meanwhile, stood by and did nothing. (Compl. ¶ 15).

Vagnini's search yielded a small plastic bag of cocaine, and the officers arrested the plaintiff. (Compl. ¶¶ 14, 20).

This incident was, apparently, not an isolated one. In 2012, the Milwaukee County District Attorney's Office investigated other similar incidents. (Compl. ¶ 25). In October of 2012, the State of Wisconsin charged Vagnini and other officers with various crimes stemming from illegal strip searches and cavity searches. (Compl. ¶¶ 26–27). Vagnini negotiated a plea

---

[1]At this stage of the proceedings, the Court must take all of the plaintiff's factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (citing *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012)), so the Court will discuss all of the plaintiff's allegations as if they are true.

agreement and pled guilty to some of the charges brought against him. (Compl. ¶¶ 28).

However, long before the State of Wisconsin charged Vagnini and the other officers, the Milwaukee Police Department had received complaints about similar illegal strip and cavity searches. (*See* Compl. ¶¶ 32–38). Indeed, as early as 2008, MPD's Internal Affairs Division and supervisors, including Flynn, Hudson, and Mucha, received such complaints (Compl. ¶¶ 32, 34–35), but consistently rejected them as meritless (Compl. ¶ 33). Meanwhile, MPD's supervisors did not discipline the accused officers or take action to better train or supervise them. (Compl. ¶¶ 33, 36).

### 1.2    Plaintiff's Claims and Defendants' Motion

The plaintiff's complaint alleges various theories of liability against the defendants. Specifically, he alleges the following claims:

Count One:    Unreasonable search and seizure in violation of 42 U.S.C. § 1983, against Vagnini (Compl. ¶¶ 41–42);

Count Two:    Failure to intervene in violation of 42 U.S.C. § 1983, against Mucha and Maglio (Compl. ¶¶ 43–44);

Count Three:    Conspiracy to deprive the plaintiff of his constitutional rights in violation of 42 U.S.C. § 1983, against Vagnini, Mucha, and Maglio (Compl. ¶¶ 45–51);

Count Four:    Municipal liability in violation of 42 U.S.C. § 1983, and pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), against the City (Compl. ¶¶ 52–61);

Count Five:    Supervisory liability in violation of 42 U.S.C. § 1983, against Flynn, Hudson, and Mucha (Compl. ¶¶ 62–65); and

Count Six:     Indemnification, pursuant to Wis. Stat. § 895.46, such that the City must pay any tort judgment for which its employees (here, Vagnini, Mucha, Maglio, Flynn, and Hudson) are responsible (Compl. ¶¶ 66–68).

The defendants have moved to dismiss Count Four (Br. in Supp. (Docket #25) at 9–14), Count Five (Br. in Supp. at 14–18), and Count Three (Br. in Supp. at 19–20), pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2.     LEGAL STANDARD ON RULE 12(c) MOTION

The Court reviews a motion under Rule 12(c) using the same standard it would when reviewing a motion under Rule 12(b)(6). *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). This means that the Court must treat all of the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892). Doing so, the Court must then determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be clear, this requires only that the plaintiff has provided a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). He need not plead extremely specific facts; so long as he has given the defendants "fair notice of what the…claim is and the grounds upon which it rests," so as to "raise a right to relief above the speculative level," then the Court should not dismiss the challenged counts of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

3.    DISCUSSION

With the relevant allegations and legal standard set forth, the Court now turns to evaluating the substance of the defendants' Rule 12(c) motion.

### 3.1    *Monell* Claims Against the City of Milwaukee

In *Monell*, the Supreme Court held that municipalities are "persons" for purposes of 42 U.S.C. § 1983, and thus may be held liable for violations of civil rights, so long as the municipality has adopted or otherwise promulgated a policy or custom that violated the plaintiff's constitutional rights. 436 U.S. at 690. The plaintiff has asserted a *Monell* claim against the City. (Compl. ¶¶ 52–61). The defendants, however, argue that the plaintiff's factual allegations in support of his *Monell* claim are not adequate to raise the inference that the City had a policy or custom that violated the plaintiff's constitutional rights. (Br. in Supp. at 9–14).

The Court will turn to the merits of this argument shortly, but must first discuss the pleading standards applicable to *Monell* claims.

#### 3.1.1    Further Discussion of Application of Rule 12 Standard to *Monell* Claim

At the outset, the Court must note that *Monell* claims are subject to the pleading standard set out by the Supreme Court in the *Twombly* and *Iqbal* cases and discussed more fully by the Court, above. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570). This is an important note because the plaintiff asserts that a liberal pleading standard applies to *Monell* cases. (Pl.'s Resp. (Docket #26) at 6–7). Specifically, the plaintiff asserts that Seventh Circuit precedent allows *Monell* claims to escape dismissal even when they are "based on relatively conclusory allegations." (Pl.'s Resp. at 6–7) (citing *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S.

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 5 of 23   Document 29

163, 165 (1993); *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000); *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 480 (7th Cir. 1997); *Sledd v. Lindsay*, 102 F.3d 282, 288–89 (7th Cir. 1996); *Jackson v. Marion Cty.*, 66 F.3d 151, 153–54 (7th Cir. 1995))). Prior to the issuance of the *Iqbal* and *Twombly* decisions, it may very well have been possible to state only "boilerplate allegations," and survive dismissal in § 1983 cases. *Lanigan*, 110 F.3d at 480. But, in the time since, the Seventh Circuit has not returned to such a liberal pleading standard. *See McCauley*, 671 F.3d at 615, 617–18. In fact, the Seventh Circuit has made clear that *Iqbal* applies to motions to dismiss in *Monell* cases, just as it would apply in any other case. *Id.*, at 618 (quoting *Iqbal*, 557 U.S. at 683, for the proposition that a *Monell* plaintiff must "allege enough 'by way of factual content to nudge his claim of purposeful discrimination across the line from conceivable to plausible.'" (internal quotation omitted)). In that way, under *McCauley*, the Court must disregard conclusory and boilerplate statements in the pleadings to determine whether, without those, the plaintiff has alleged sufficient factual matter to state a claim for relief that is plausible on its face. *Id.*, at 617–18 (citing *Iqbal*, 557 U.S. at 683). In other words, there is no liberal pleading standard applicable to *Monell* claims; rather, the Court must apply *Iqbal* and *Twombly* just as it would in evaluating most other claims.

However, it is also important to note that this principle swings the other way, too: the Court does not apply a *heightened* pleading standard to civil rights claims, including *Monell* claims. *See, e.g.*, *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("In a civil rights case alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 6 of 23   Document 29

requirements.") (citing *Leatherman*, 507 U.S. at 165). *See also McCormick*, 230 F.3d at 323 (also citing *Leatherman*, 507 U.S. at 164); *Latuszkin*, 250 F.3d at 504. The Seventh Circuit released its decision in *Estate of Sims* after the Supreme Court had already issued its *Twombly* decision. *See Estate of Sims*, 506 F.3d at 512 (citing *Twombly*, 550 U.S. 544). Thus, presumably, the Seventh Circuit was aware that the Supreme Court had at least hinted at a change in the Rule 8(a) pleading standard in *Twombly*, and yet the Seventh Circuit nonetheless declined to apply a heightened pleading standard to *Monell* claims. *Estate of Sims*, 506 F.3d at 514. Moreover, even though *Estate of Sims* pre-dates *Iqbal*, the Court has not found any case law following either case that calls into question the proposition that *Monell* claims are not subject to heightened pleading standards. In fact, district court cases from around the Circuit continue to cite *Estate of Sims* for precisely that proposition. *See, e.g.*, *Listenbee v. Harvey*, No. 11-CV-03031, 2013 WL 5567552, at *2 (N.D. Ill. Oct. 9, 2013) (one of many cases from the Northern District of Illinois citing *Estate of Sims* for this proposition); *Miller v. City of Plymouth*, No. 09-CV-205, 2010 WL 1474205, at *4 (N.D. Ind. April 9, 2010). The Seventh Circuit, itself, continues to cite the case approvingly for other purposes in § 1983 litigation, and has never questioned the conclusion that *Monell* claims are not subject to a heightened pleading standard. *See, e.g.*, *Johnson v. Cook Cty.*, 526 Fed. App'x 692, 696 (7th Cir. 2013); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012); *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011). For this reason, the Court must not apply a heightened pleading standard to the plaintiff's *Monell* claim.

Of course—as with practically all of the case law in this area—there is a further qualification that applies to that conclusion. Recently, the Seventh Circuit reaffirmed *McCauley*'s holding that, for pleadings, "'the degree of specificity required…rises with the complexity of the claim.'" *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (quoting *McCauley*, 671 F.3d at 616–17; also citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)). Thus, while there is not a heightened pleading requirement for *Monell* claims, *per se*, the Court must also beware to apply a pleading standard that requires a degree of specificity to meet the complexity of such a claim.

In essence, all of this is a roundabout way of stating that the Court will apply the standard described in *Iqbal* and *Twombly* to the plaintiff's *Monell* claim. Nothing more and nothing less. It will not apply a heightened pleading standard, but it also will not apply an unduly liberal pleading standard, either.

### 3.1.2   Substantive Analysis of *Monell* Claim

With the applicable pleading standard clarified, the Court turns to its substantive analysis of the defendants' motion for judgment on the pleadings on the plaintiff's *Monell* claim against the City.

To state a *Monell* claim, the plaintiff must plead factual content that would allow the Court to draw a reasonable inference that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation. *McCauley*, 671 F.3d at 616; *Monell*, 436 U.S. at 694–95.

There is no question that the plaintiff has alleged facts sufficient to raise the inference that he has suffered the deprivation of a constitutional right in satisfaction of the first of those elements. He alleges that he: was

strip-searched (Compl. ¶ 13–14); provides the approximate date and time of that search (Compl. ¶ 11); describes the way in which the alleged strip search and arrest occurred (Compl. ¶¶ 14–15, 18–20); and identifies three officers present at the time of the alleged search (Compl. ¶¶ 14–15). Accepting that factual matter as true, the plaintiff clearly states a claim to relief that is plausible on its face, in satisfaction of *Iqbal*'s pleading requirements. 556 U.S. at 678. The defendants seem to agree, as they do not argue that the plaintiff has failed to meet the pleading standard as to the first element.

On the other hand, it is a much closer question as to whether the complaint meets the pleading standard on the second element of a *Monell* claim. This is where the defendants focus their arguments in favor of dismissing the *Monell* claim against the City: they argue that the plaintiff has not pled sufficient factual matter to permit the Court to draw a reasonable inference that the City had a policy or custom that caused the deprivation of the plaintiff's rights. (*See* Br. in Supp. at 9–14).

It is well-settled that, despite the fact that *Monell* allows for municipalities to be held liable under § 1983, it does not allow for liability under § 1983 on a theory of *respondeat superior* or vicarious liability. *E.g.*, *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985); *Monell*, 436 U.S. at 691); *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) (citing *Horwitz v. Bd. of Ed. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619–20 (7th Cir. 2001)); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell*, 436 U.S. at 694). In other words, "[m]isbehaving employees are responsible for their own conduct," and "'units of local government are responsible only for their policies, rather than misconduct

by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)).

In keeping with that principle, *Monell* liability will appropriately lie against the City only if the plaintiff identifies some policy or custom of the City that caused him to be deprived of a constitutional right. *Monell*, 436 U.S. at 694–95. In essence, this is the second element of a *Monell* claim. To satisfy it, the plaintiff will have to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone*, 665 F.3d at 780 (quoting *Darchak v. City of Chi. Bd. of Ed.*, 580 F.3d 622, 629 (7th Cir. 2009)). *See also Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012) (quoting *Milestone*, 665 F.3d at 780); *Johnson v. Cook Cty.*, 526 Fed. Appx. 692, 695 (7th Cir. 2013) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

The plaintiff appears to proceed under the second of those theories: that the City had some widespread, but unwritten, custom or practice that caused the constitutional violation of which he complains.[2] (*See* Compl. ¶¶ 53–56). In his complaint, the plaintiff alleges that the City had "*de facto*" policies of: (1) failing to train and supervise police officers; (2) encouraging a police code of silence; and (3) encouraging unreasonable searches and seizures and wrongful arrests. (Compl. ¶¶ 54–56). In support of this allegation, the plaintiff asserts the following relevant facts:

---

[2]The Court cannot identify any allegations in the Complaint that relate to either an express municipal policy or a decision by a policymaker with final authority.

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 10 of 23   Document 29

(1)     that Vagnini performed an illegal strip search on him without probable cause while Maglio and Mucha stood by and refused to intervene, after which time Vagnini arrested the plaintiff (Compl. ¶¶ 14–15, 18–19, 21–22);

(2)     prior to the date on which the plaintiff was strip-searched, MPD, its Internal Affairs Division, and other authorities affiliated with the City, had received complaints regarding similar incidents (Compl. ¶ 32);

(3)     despite receiving those complaints, the City and MPD officials did nothing to address them, such as training or disciplining its officers; instead, the City ignored or rejected the complaints and even issued commendations to officers who performed aggressive and illegal searches (Compl. ¶ 33–37);

(4)     it was not until after the illegal searches came to light that the MPD conducted its own investigation, which led it to change its search policy to require authorization from a high-ranking official before officers would be permitted to conduct a cavity search or strip search (Compl. ¶¶ 34, 39);

(5)     the City had widespread, though unwritten, policies of: (a) failing to adequately investigate complaints relating to a police code of silence; (b) refusing to take action to address the complaints it received, such as through disciplining or training its officers; and (c) encouraging its officers to perform unreasonable and illegal searches by commending officers who utilized aggressive tactics (Compl. ¶¶ 53–58); and

(6)     these widespread policies caused the plaintiff's injury because they not only encouraged Vagnini to illegally search and arrest the plaintiff while the other officers stood by, but also assured the officers that they would not face repercussions as a result of their conduct (Compl. ¶ 59–60).

To state a widespread practice claim under *Monell*, the plaintiff must allege "facts tending to show that the City policymakers were aware of the behavior of officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." *Latuszkin*,

250 F.3d at 505. The City, however, cannot be liable unless that policy, "although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). *See also Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) ("An official policy or custom may be established by…a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy") (citing *Milestone*, 665 F.3d at 780; *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009)). It is necessary that there be some "true municipal policy at issue, not a random event." *Calhoun*, 408 F.3d at 380. For example, "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work, not the kind of isolated incident that…cannot support municipal liability." *Id.*

Thus, in order to find a widespread policy, the Supreme Court, in *City of Canton v. Harris*, and the Seventh Circuit, in other cases, have both looked for circumstances demonstrating that municipal officials were deliberately indifferent to known or obvious consequences of the municipality's action or inaction. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (holding that liability should be imposed only if the municipality's degree of fault constitutes deliberate indifference to constitutional rights); *Rice ex rel. Rice*, 675 F.3d at 675 (noting that, as with "any policy or practice" for which a plaintiff seeks to hold a municipality liable, the plaintiff must show "deliberate indifference to the rights of individuals") (citing *Harris*, 489 U.S. at 389; *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)); *Gable v. City of Chicago*,

296 F.3d 531, 537 (7th Cir. 2002); *Latuszkin*, 250 F.3d at 505. The plaintiff can plead this deliberate indifference by alleging facts that would establish "either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029–30 (7th Cir. 2006) (citing *Harris*, 489 U.S. at 390 & n.10; *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997)). But, whatever the evidence of deliberate indifference, the plaintiff "must also show a direct causal connection between the policy or practice and his injury, in other words that the policy or custom was 'the moving force [behind] the constitutional violation.'" *Rice ex rel. Rice*, 675 F.3d at 675 (quoting *Harris*, 489 U.S. at 389; *Polk Cty.*, 454 U.S. at 326; *Monell*, 436 U.S. at 694).

This is a tall order to fill; even so, the plaintiff has alleged facts sufficient to do so. The plaintiff's factual allegations, taken as true, adequately state a claim that is plausible on its face, and thus dismissal of the plaintiff's *Monell* claim against the City would be inappropriate at this time.

Most importantly, the plaintiff has sufficiently alleged that the City received numerous complaints of illegal searches prior to the incident in question. (Compl. ¶ 32–35). The defendants assert that these allegations are insufficient because they "fail to assert any facts pertaining to the time, place, or identity of the individuals involved with the other complaints of unlawful

searches."[3] (Br. in Supp. at 12). This, the defendants argue, means that the plaintiff has failed "to plead facts which establish that the complaints of other unlawful searches occurred before the subject incident of December 16, 2011." (Br. in Supp. at 12). This argument fails for two reasons. First, the plaintiff quite clearly alleged that such complaints were made "[a]s early as 2008." (Compl. ¶ 32). The complaint also discusses that the MPD "had been receiving complaints for several years before" opening its own investigation. (Compl. ¶ 33). On this basis, the Court can draw the reasonable inference, *Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892), that the plaintiff is alleging that the MPD and the City had received similar complaints prior to the subject incident. Second, the Court does not believe it is necessary for the plaintiff to have pled specifics like the time, place, or identity of the other complaints. General allegations that the City and MPD received complaints is enough to give rise to an inference that its officials had knowledge that other, similar illegal searches were occurring. Frankly, specifics like time, place, and identity would add very little in the way of substance to the allegations of the complaint. Moreover, the plaintiff would not possibly have access to that information without discovery. Finally, the Court reiterates that it should not apply a heightened pleading standard in *Monell* claims, *e.g.*,

---

[3]The defendants also argue that the plaintiff has not sufficiently pled facts to establish the City's knowledge because there were only *complaints* of unlawful searches, rather than *final adjudications* that the searches were unlawful. (Br. in Supp. 13). This argument hardly justifies a discussion. To be sure, the plaintiff only alleges that there were complaints; but the lack of formal adjudications of those complaints forms an integral part of the plaintiff's claim. He asserts that the City had a widespread policy of ignoring complaints. A lack of formal adjudications would be a logical symptom of that policy. The City's position in this regard is therefore untenable, because it would require adjudication when, in fact, the lack of adjudication is a result of the problem.

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 14 of 23   Document 29

*Estate of Sims*, 506 F.3d at 514; this is not a case that falls under Rule 9 of the Federal Rules of Civil Procedure, such that it must be pled with particularity. For these reasons, the Court finds that the plaintiff's allegations support the conclusion that the City had received complaints of illegal searches prior to the subject incident.

Having received those complaints, the City necessarily had knowledge or notice that aggressive searches were occurring and was deliberately indifferent. However, rather than training and disciplining its officers or investigating complaints, the City instead occasionally commended its aggressive officers and ignored or rejected the complaints. (Compl. ¶¶ 32–37). An obvious consequence of these actions would be for aggressive searches to continue and escalate, such that the City could be found deliberately indifferent if the plaintiff's allegations are true. *See, e.g.*, *Harris*, 489 U.S. at 388. Indeed, the plaintiff alleges that the City not only failed to provide adequate training in light of foreseeable consequences, but also that it failed to act in response to repeated complaints of constitutional violations by its officers, such that he has adequately alleged that the City was deliberately indifferent. *Sornberger*, 434 F.3d at 1029–30 (citing *Harris*, 489 U.S. at 390 & n.10; *Robles v. City of Fort Wayne*, 113 F.3d at 735).

Finally, the Court points out that, taking the plaintiff's allegations as true, the City's alleged widespread policies ultimately caused the deprivation of the plaintiff's constitutional rights. As the Court has already noted, whatever the evidence of deliberate indifference, the plaintiff "must also show a direct causal connection between the policy or practice and his injury, in other words that the policy or custom was 'the moving force [behind] the constitutional violation.'" *Rice ex rel. Rice*, 675 F.3d at 675 (quoting *Harris*, 489

U.S. at 389; *Polk Cty.*, 454 U.S. at 326; *Monell*, 436 U.S. at 694). The plaintiff has alleged facts to meet this requirement. At the very least, the Court can infer, *see Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892), that the alleged policies were a but-for cause of the plaintiff's injuries, because if the City had, for instance, taken steps to investigate the offending officers, it could have found that they were responsible for other similar incidents and removed them from the force. Likewise, if the City had better disciplined or trained its officers (or perhaps not encouraged them to conduct aggressive searches), it is likely that the officers in question would not have illegally stopped the plaintiff's car, illegally searched the plaintiff, or illegally arrested him. The plaintiff has, therefore, pled facts sufficient to plausibly allege that the City's policies were the moving force behind the constitutional deprivation that he suffered.

To be sure, the plaintiff's complaint is not a model of clarity in relation to his *Monell* claim: some of its assertions are vague and border on the sort of conclusory statements that the Court can disregard (*e.g.*, Compl. ¶¶ 53–61); meanwhile, many of the concrete factual allegations are listed early in the complaint and merely incorporated by reference into each section (Compl. ¶¶ 11–24; 32–40), when it would have been beneficial to draw specific connections between the alleged facts and the alleged policies of the City. But the Court is not the plaintiff's scrivener. Rather, at this stage of the proceedings, its job is to take the alleged factual content as true, draw reasonable inferences in the plaintiff's favor, and then determine whether, with that information, the plaintiff has stated a plausible claim for relief. *E.g.*, *Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892); *Iqbal*, 556 U.S. at 678.

Doing so, and for the reasons more fully discussed above, the Court determines that the plaintiff has alleged facts that state a *Monell* claim against the City that is plausible on its face. The evidence adduced during discovery may ultimately prove that this is not the case, but that is an inquiry for another day. At this stage of the proceedings, the Court is obliged to deny the defendants' motion for judgment on the pleadings on the plaintiff's *Monell* claim against the City.

### 3.2 Supervisory Liability Claim Against Flynn, Hudson, and Mucha

The defendants' motion for judgment on the pleadings on the plaintiff's supervisory liability claim against Flynn, Hudson, and Mucha fails for similar reasons.

Supervisors "need not participate directly in the deprivation [of civil rights] for liability to follow under § 1983." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869–70 (7th Cir. 2011).[4] Indeed, so long as the supervisors

---

[4]The *Backes* court reached this conclusion in relation to several police supervisors who had been sued in their individual capacity. *See Backes v. Vill. of Peoria Heights, Ill.*, C.D. Ill. Case No. 07-CV-1283, Compl. (Docket #1) ¶¶ 7–8. Meanwhile, the plaintiff sued Flynn in both his individual and official capacities. (Compl. ¶ 6). The defendants argue that there is some difference in the standard applied to individual- and official-capacity claims, but does not cite to any case law to support that contention. (Br. in Supp. 14–16). The Seventh Circuit applied the standard described in *Backes* to defendants sued in their official capacity in the case of *Mathews v. City of East St. Louis*, without noting any distinction between the two. 675 F.3d 703, 708 (7th Cir. 2012); *Mathews v. City of East St. Louis*, S.D. Ill. Case No. 09-CV-870, Compl. (Docket #32) ¶ 3. The Court will take the same path and will treat both the individual- and official-capacity claims against Flynn as one and the same. The Court will also ignore the defendants' argument that Hudson and Mucha cannot be held liable under a *Monell* theory because they are not official policymakers (Br. in Supp. at 16–18); the plaintiffs acknowledge that they do not raise *Monell* claims against those defendants (Pl.'s Resp. at 12 n.1), so this argument is irrelevant.

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 17 of 23   Document 29

"know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see," they may be held liable. *Id.*, at 870 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). In other words, supervisors may be held liable under § 1983 for the actions of their subordinates if they acted "either knowingly or with deliberate indifference." *Backes*, 662 F.3d at 870. *See also Chavez*, 251 F.3d at 651; *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988).

The plaintiff's allegations on the supervisory liability issue do not go very far beyond those discussed above with relation to his *Monell* claim. (*See* Compl. ¶¶ 62–65). In fact, aside from his incorporation of facts (Compl. ¶ 62) and statement that he suffered damages (Compl. ¶ 65), the plaintiff alleges only the conclusory statements that Flynn, Hudson, and Mucha knew or should have known about the officers' pattern of engaging in improper searches (Compl. ¶ 63) and "facilitated, approved, condoned, turned a blind eye to, and/or purposefully ignored" that misconduct (Compl. ¶ 64).

Those limited and conclusory allegations, by themselves, would not be sufficient to raise the plaintiff's supervisory liability claim above the speculative level; however, in conjunction with the other facts alleged in the complaint, the plaintiff clears that bar. As discussed more fully above, the plaintiff claims that the City and MPD received many complaints relating to improper searches prior to the incident in question. (Compl. ¶ 32). The plaintiff also asserts that the City and MPD failed to take any action to address those complaints. (Compl. ¶¶ 33–37). The defendants point out that, otherwise, "there are no allegations that support plaintiff's assertion that Chief Flynn, Captain Hudson, or Sergeant Mucha were aware of a pattern of unlawful searches being committed by Vagnini and other Fifth District

officers." (Reply (Docket #28) at 9). Be that as it may, the Court may draw the reasonable inference that, by virtue of their positions as supervisors, Flynn, Hudson, and Mucha, all received reports of the many illegal-search complaints being lodged with the City and MPD. *See Scherr*, 703 F.3d at 1073 (citing *Fail-Safe*, 674 F.3d at 892).

Thus, the Court finds that the plaintiff has alleged sufficient factual material to have plausibly pled Flynn's, Hudson's, and Mucha's knowledge; he has also adequately pled that, at the very least, those individuals turned a blind eye to the complaints they were receiving. (*See* Compl. ¶¶ 32–37). Accordingly, the plaintiff's supervisory liability claim against Flynn, Hudson, and Mucha, is sufficiently pled under *Iqbal*, 556 U.S. at 678. The Court is, therefore, obliged to deny the defendants' motion for judgment on the pleadings in this regard.

### 3.3 Conspiracy Claim Against Vagnini, Mucha, and Maglio

Finally, the Court turns to the defendants' motion for judgment on the pleadings on the plaintiff's conspiracy claim against Vagnini, Mucha, and Maglio who stood by while Vagnini strip-searched the plaintiff. In brief, the plaintiff alleges that Vagnini, Mucha, and Maglio acted together to deprive the plaintiff of his right to be free from unreasonable searches, and thereafter concealed their actions from authorities. (Compl. ¶¶ 46–49). He asserts that those actions constitute a conspiracy between the officers to deprive him of his civil rights. (Compl. ¶ 51). The defendants argue that the plaintiff's factual allegations are not adequate to support his conspiracy claim. (Br. in Supp. 18–20).

"'A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act…the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) (emphasis removed) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part*, 446 U.S. 754 (1980)). In *Hampton*, the Seventh Circuit emphasized that there need not be an "express agreement among all the conspirators," for there to be a civil conspiracy. *Hampton*, 600 F.2d at 620–21. Rather, so long as the "participants in the conspiracy…share the general conspiratorial object," each individual "need not know all the details" to be liable as a member of the conspiracy. *Id.* However, the Seventh Circuit also cautioned that *Hampton* did not eliminate the requirement that there be some agreement between the parties. *Cooney*, 735 F.3d at 519 ("*Hampton* did not remove the requirement of a conspiratorial *agreement*" (emphasis in original)).

In evaluating whether the plaintiff adequately pled a conspiracy claim, the Court should not apply Rule 9(b)'s particularity requirement, *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), but must nonetheless dismiss the plaintiff's claim if all he has done is allege mere suspicion or boilerplate accusations that the defendants conspired against him. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Evers v. Reak*, 21 Fed. App'x 447, 450 (7th Cir. 2001) ("Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden."). The plaintiff must have alleged "the parties, the general purpose, and the approximate date of the conspiracy" to escape dismissal. *Loubser*, 440 F.3d at 443 (citing *Walker v. Thompson*, 288 F.3d 1005, 1007–08 (7th Cir.2002)).

Applying that standard, the Court finds that the plaintiff has just barely pled facts sufficient to support his conspiracy claim. He has alleged the parties to the conspiracy: Vagnini, Mucha, and Maglio. (Compl. ¶ 46). He has alleged the general purpose of the conspiracy: to conduct illegal searches of citizens, including the plaintiff. (Compl. ¶ 46). And, he has also alleged the approximate dates of the conspiracy: from, at latest, the day on which the incident in question occurred (December 16, 2011, which can be inferred from the fact that all defendants were present on that day, yet none acted to stop the illegal search and arrest (Compl. ¶¶ 12, 15)) and through, at the earliest, the investigations of the officers, during which the officers concealed relevant information from the responsible authorities (Compl. ¶ 49). Finally, the plaintiff has also alleged facts that, if true, would be sufficient to create an inference that the alleged conspirators had a "meeting of the minds," as required by *Hampton*, 600 F.2d at 621: he alleges: that the officers acted in concert to stop the car in which he was riding (Compl. ¶ 12); that Vagnini performed the illegal search while others watched but did not intervene, after which time the officers arrested the plaintiff (Compl. ¶ 14–15); and that the officers acted together to conceal their illegal activities from authorities (Compl. ¶ 49). Having pled the parties, general purpose, approximate date, and agreement at operation in the conspiracy, the plaintiff has sufficiently pled his conspiracy claim against Vagnini, Mucha, and Maglio.

As with most other components of his complaint, all of these allegations in reference to the conspiracy are vague and disjointed, but those shortcomings do not change the Court's analysis. In *Geinosky v. City of Chicago*, the Seventh Circuit noted that where "several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on

many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion." 675 F.3d 743, 749 (7th Cir. 2012). The defendants are correct that *Geinosky* is not directly on point with the case at hand. (Reply 13–14). The plaintiff in *Geinosky* was subject to over twenty-four separate incidents over a period of fourteen months, 675 F.3d at 745, a situation that is much easier to identify as a conspiracy than the case at hand. However, despite those differences, the Court finds that the principle announced in *Geinosky* applies to this case. That is, the Court should not dismiss this complaint for failing to explicitly connect the officers' actions to their logical import that the officers acted in concert when illegally searching the plaintiff. *See Geinosky*, 675 F.3d at 749 ("we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion"). While the "suggestion of collusion" may not be as strong in this case as it was in *Geinosky*, the officers' actions still do suggest collusion. *Id.* Therefore, it would be inappropriate to dismiss this case due to the plaintiff's failure to explicitly "link[ ] the factual details" to his conspiracy claim. *Id.*

Simply put, the plaintiff's allegations are sufficient, despite their shortcomings, to give rise to the inference that Vagnini, Mucha, and Maglio colluded with one another to deprive the plaintiff of his civil rights. This is sufficient to state a plausible claim for civil conspiracy. The Court must, accordingly, deny the defendants' motion for judgment on the pleadings on plaintiff's conspiracy claim.

4.      CONCLUSION

For the reasons more fully discussed above, the Court is obliged to deny the defendants' motion for judgment on the pleadings in full. This, of course, does not mean that the plaintiff prevails on his case. The parties must still carry out discovery. Then, it is only if the plaintiff discovers evidence to prove up each of his claims that he may ultimately prevail at summary judgment or trial. However, at this stage, the Court finds that all of the plaintiff's claims will be allowed to proceed.

Accordingly,

IT IS ORDERED that the defendants' motion for partial judgment on the pleadings (Docket #24) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 15th day of January, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:13-cv-00920-JPS   Filed 01/15/14   Page 23 of 23   Document 29